UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABDELAZIZ HAMZE,

        Plaintiff,

v.

                                      Case No. 3:23-cv-1394-JEP-LLL

NURSE MORGAN, et al.,

        Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, Abdelaziz Hamze, initiated this action by filing a pro se Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 1) in the Ocala Division of the United States District Court for the Middle District of Florida. The Honorable William F. Jung, United States District Judge, transferred the case to the Jacksonville Division. Doc. 3. Plaintiff is now proceeding on an amended complaint. Doc. 13. In his amended complaint, Plaintiff names nine Defendants in their individual and official capacities: (1) Nurse Morgan; (2) Lieutenant J.C. Walker; (3) Sergeant Rathel; (4) Officer Sosa; (5) Sergeant Duckwiler; (6) Sergeant Johnathan Stokes; (7) Officer Pope-

Jones; (8) Warden Hodgson;[1] and (9) Nurse Davis.[2] *Id.* at 1–4. He asserts Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. *Id.* at 7–8. As relief, he requests declaratory relief, monetary damages, and injunctive relief "to restrain the defendants from Plaintiff completely." *Id.* at 8.

This matter is before the Court on Defendants Walker, Hodgson, Sosa, Rathel, Duckwiler, Pope-Jones, and Stokes' Motion to Dismiss. Doc. 67. Plaintiff filed a response. *See* Doc. 77. Thus, the motion is ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept as true the factual allegations set forth in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while

---

[1] While Plaintiff refers to the Warden as Hodgekinson, the service of this Defendant (*see* Doc. 49) and filings by Defendants indicate his correct name is Warden Christopher Hodgson. Thus, the Court will use Hodgson to the extent that it must refer to him by name.

[2] In an earlier order, the Court directed Hamze to provide sufficient information to identify and serve Nurse Morgan and Nurse Davis. Doc. 60.

"[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter,

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at

678 (quoting *Twombly*, 550 U.S. at 570).

### III. Plaintiff's Allegations[3]

Plaintiff states that at approximately 9:25 p.m. on December 26, 2019,

Walker approached his cell and told him to go to medical for an emergency, but

when Plaintiff told Walker that he did not declare an emergency, Walker told

Plaintiff  he needed to go to medical to tell the nurse, and that if he did not

come out of his cell, Walker would gas him and extract him with "as much force

as possible." Doc. 13 at 6. Plaintiff asserts he then had to exit the cell in full

restraints. *Id.* According to Plaintiff, when he arrived at medical and was

sitting down to speak to Nurse Morgan, Rathel punched Plaintiff in the face

with a closed fist, causing Plaintiff to fall to the ground. *Id.* He states

Duckwiler punched him in the face "with Rathel" over fourteen times and that

Officer Sosa joined and punched Plaintiff's chin and forehead "at least" seven

times. *Id.* Plaintiff asserts he lost consciousness for one-to-two minutes and

then Duckwiler kicked him in the chest twice "causing me temporary inability

to inhale and intermittent suffocation for several hours later." *Id.* Plaintiff

---

[3] In considering the Motion to Dismiss, the Court must accept all factual allegations in the amended complaint as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the amended complaint and may well differ from those that ultimately can be proved.

states the incident continued until 9:42 p.m., and that during the ordeal he asked Walker and Morgan to stop the three others, but "Walker simply shrugged" and Morgan laughed. *Id.* Plaintiff asserts Walker admitted that they all knew the emergency call out had been fake and it had been orchestrated "because of all the grievances and lawsuits [Plaintiff] filed against DOC officers and Warden [Hodgson] said that he was tired of [Plaintiff] and that he personally ordered this abuse to happen." *Id.*

Plaintiff further states that on April 27, 2020, Pope-Jones denied Plaintiff lunch and falsely accused him of being disruptive. *Id.* Approximately an hour later, Walker approached Plaintiff's cell, and Plaintiff complained that he had been denied his meal. *Id.* Plaintiff asserts Walker told him "you write my staff up, then that's business" before telling Plaintiff he again had to go to medical for an emergency, saying, "Remember when I told you what's gonna happen if you file a grievance. You chose to file it and here it is. Either you come out, or I will gas you and then the cell extraction team will beat your brains out." *Id.* According to Plaintiff, Pope-Jones and Stokes came to his door, called him a "snitch and rip writer," threatened to beat him to death through cell extraction or in medical, and "made it clear" the Warden ordered them to beat him because of the grievance Plaintiff filed regarding the December incident. *Id.* at 7. Plaintiff asserts Pope-Jones and Stokes sprayed him with chemical agents, emptying two full bottles, and causing Plaintiff pain and the

inability to breathe. *Id.* Walker removed Plaintiff from the cell and asked him if he still had the chest pain he complained about in his grievance. *Id.* When Plaintiff told Walker he could not breathe properly, Walker told Plaintiff if he did not refuse medical treatment, he "would not be breathing at all," because "[t]his is straight from the Warden and he isn't gonna play with you." *Id.* "He said he's not having your grievances anymore." *Id.* Plaintiff asserts that he suffered "extreme illness and daily vomiting and coughing so severe that blood came out with it," fever, headache, and disorientation because of being sprayed with chemical agents. *Id.* According to Plaintiff, in the following days, he complained of his symptoms to Nurse Davis, who refused to examine him, stating, "you refused and signed that form so you're out of gas." *Id.*

## IV. Analysis

In the motion, Defendants argue the case should be dismissed because Plaintiff misrepresented his litigation history. Doc. 67 at 5–8. Alternatively, Defendants assert that all official capacity claims should be dismissed based on Eleventh Amendment immunity, all First Amendment claims and claims regarding the April 2020 incident should be dismissed for Plaintiff's failure to exhaust his administrative remedies, and that all state law claims shall be dismissed for Plaintiff's failure to give pre-suit notice of his claims as required by section 768.28, Florida Statutes. *See id.* at 8–14. Lastly, Defendants assert Plaintiff is not entitled to punitive damages. *Id.* at 14–22.

## A. Failure to Disclose Litigation History

Defendants first argue that this action should be dismissed for Plaintiff's failure to accurately disclose his litigation history. Doc. 67 at 5–8. Defendants allege Plaintiff failed to disclose "at least eight federal court cases and at least 23 writs of mandamus filed in Leon County and Santa Rosa County circuit court[s]. *Id.* at 5. However, Defendants specifically cite only five federal cases to support their position: (1) Case No. 3:24-cv-519 (N.D. Fla. Aug. 28, 2014); (2) Case No. 3:14-cv-708-MMH-PDB (M.D. Fla. June 17, 2014); (3) Case No. 12-10509 (11th Cir. Jan. 30, 2012); (4) Case No. 11-14494 (11th Cir. Sept. 30, 2011); and (5) Case No. 13-7942 (U.S. Supreme Court May 7, 2013). Plaintiff counters that he provided his litigation history "diligently" and "to his best ability without any intent to mislead the court." Doc. 77 at 1.

This Court acknowledges its authority to manage its docket and dismiss a case wherein a plaintiff misrepresents his litigation history. *McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) (finding district court "had inherent authority to dismiss [plaintiff's] complaint without prejudice as a sanction for his failure to disclose his full litigation history as required by the standard inmate complaint form"). However, where a dismissal of the case "has the effect of precluding [plaintiff] from refiling his claim due to the running of the statute of limitations . . . [t]he dismissal [is] thus tantamount to a dismissal with prejudice." *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir.

7

1993) (quoting *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. Unit B 1981));

*Stephenson v. Warden, Doe*, 554 F. App'x 835 (11th Cir. 2014).[4] A dismissal

with prejudice is improper unless "the district court finds a clear record of delay

or willful conduct and that lesser sanctions are inadequate to correct such

conduct." *Betty K Agencies, Ltd.*, 432 F.3d at 1339 (citations omitted).

The limitations period for claims brought under 42 U.S.C. § 1983 is the

forum state's personal injury statute of limitations, which is four years in

Florida. *See City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir.

2002); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). Plaintiff's action,

which was filed in late 2023, was based on events occurring in 2019 and 2020,

*see* Complaint at 6–7, and therefore, any dismissal would be tantamount to a

dismissal with prejudice.

Defendants do not address this heightened burden for dismissal. Under

the circumstances presented here, the Court is not inclined to dismiss the

complaint for failure to disclose this litigation history. The Court does not view

Plaintiff's missing litigation as willful conduct such that dismissal with

prejudice is warranted. Plaintiff acknowledged his extensive litigation history,

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

answering that he had previously had a case dismissed under 28 U.S.C. 1915(g)[5] and disclosing twenty-two prior federal lawsuits. *See* Doc. 13 at 11, 15–17. Moreover, the five cases Defendants provided as examples of Plaintiff's alleged misrepresentation similarly do not support a willfulness finding. The first two (Case Nos. 3:24-cv-519 and 3:14-cv-708) were requests for preliminary injunctions and did not initiate a full civil action. The last three cases from the Eleventh Circuit and U.S. Supreme Court are all appellate actions stemming from Case No. 0:09-cv-60882-AJ (S.D. Fla June 12, 2009), a case Plaintiff not only disclosed, but noted its affirmance on appeal. *See* Doc. 13 at 15. Accordingly, under these circumstances, Defendants' motion to dismiss for failure to disclose prior cases is denied.

## B. Official Capacity

Defendants contend they are entitled to Eleventh Amendment immunity to the extent Plaintiff raises claims against them in their official capacity. Doc. 67 at 8. Specifically, Defendants assert that as state officials, they may not be sued in their official capacity for monetary damages. *Id.* Plaintiff argues Defendants are barred from raising Eleventh Amendment immunity in a motion to dismiss. Doc. 77 at 6–8. The Court rejects that argument.

---

[5] Plaintiff paid the filing fee to initiate this action and did not seek to proceed *in forma pauperis.*

9

"An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction[.]" *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). "As such, an assertion of Eleventh Amendment immunity can be raised at any time." *Blain v. Centurion of Florida, L.L.C.*, No. 8:20-CV-49-T-24 SPF, 2020 WL 4456201, at *2 (M.D. Fla. Aug. 3, 2020)[6] (rejecting argument that Eleventh Amendment immunity could not be raised in successive motion to dismiss).

Official capacity claims are treated as claims against the entity that employs the Defendants. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (internal quotations and citations omitted); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (noting that when a "private entity" that "contracts with a county to provide medical services . . . performs a function traditionally within the exclusive prerogative of the state" and is treated the same as the government entity for § 1983 purposes); *Mcelwain v. Escambia Cnty.*, No. 3:23CV22026/MCR/ZCB, 2024 WL 2264409, at *2 (N.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 3:23CV22026/MCR/ZCB, 2024 WL 2261109 (N.D. Fla. May 17, 2024) ("Plaintiff's official capacity claims are

---

[6] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

treated as claims against the entity that employs the medical Defendants.").

Thus, suit against these Defendants constitutes a suit against the Florida

Department of Corrections (FDOC). Absent consent, "a suit in which the State

or one of its agencies or departments is named as the defendant is proscribed

by the Eleventh Amendment." *Papasan v. Allain*, 478 U.S. 265, 276 (1986)

(quotation omitted). In *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986)

(per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. *Quern v. Jordan*, 440 U.S. 332, 340–45, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. *See Gamble*,[7] 779 F.2d at 1513–20.

However, official capacity actions seeking prospective relief are not treated as

actions against the State. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14

(1985). Thus, official capacity claims against these Defendants are barred to

the extent Plaintiff seeks monetary damages but may remain available as to

his requests for prospective relief. Therefore, the motion will be granted only

---

[7] *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509 (11th Cir. 1986).

to the extent Plaintiff requests monetary damages from these Defendants in their official capacity.

## C. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action regarding prison conditions may be initiated by a prisoner in a district court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Still, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.*

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits[.]" *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory . . . and

12

unexhausted claims cannot be brought[.]" *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (citing *Jones*, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in the applicable administrative rules and policies of the institution. *Woodford*, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In *Ross*,

13

the Court identified three circumstances in which an administrative remedy would be considered "not available." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of

14

>the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting *Turner*, 541 F.3d at 1085).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

>The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time

15

before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824.

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." *See* Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. *See* Fla. Admin. Code R. 33-103.014(1).

## 2. The Parties' Positions Regarding Exhaustion

In his Amended Complaint, Plaintiff asserts he exhausted his administrative remedies as to the use of excessive force and refusal of medical treatment. Doc. 13 at 9–10. He further alleges that because of Defendants' acts

16

of reprisal, Defendants "deterred [him] from filing further grievances in that regard especially seeing that I got no responses from the institution to them." *Id.* at 8.

Defendants, however, argue Plaintiff failed to exhaust his administrative remedies with respect to his First Amendment claims and any claim stemming from the April 2020 incident. Doc. 67 at 8–9. Specifically, Defendants assert Plaintiff did not file any grievances related to retaliation or the April 2020 incident. *Id.* at 10. Defendants state that they have no record of the December 27 grievance Plaintiff discusses in his amended complaint (*see* Doc. 13 at 10). Doc. 77 at 11. However, Defendants assert Plaintiff's own statements are that he only grieved "excessive use of force, refusal to aid and treat injuries," not any First Amendment issue, and that even if he had discussed retaliation, the February 26, 2020 appeal would have been untimely and would, thus, not have complied with proper grievance procedures. *Id.* at 10–11. Defendants further argue that his appeal, Appeal 20-6-08512, referenced only the excessive use of force by Rathel and Duckwiler and the deliberate indifference of Walker and Sosa, and in no way referenced any First Amendment issue or any other Defendants. *Id.* at 11. Accordingly, Defendants request that the Court dismiss all First Amendment claims, and that the Court dismiss the December 2019 claims to the extent they are against Defendants Pope-Jones, Stokes, and Hodgson. *Id.* at 11–12.

17

As to the April 2020 incident, Defendants state Plaintiff only submitted an April 28, 2020 grievance alleging that Pope-Jones denied him a meal, a May 17, 2020 formal grievance seeking to appeal his disciplinary report related to an April 2020 incident, and several appeals challenging his disciplinary report. *Id.* at 12. Defendants state these were insufficient to grieve his claims regarding the April 2020 incident and request that those claims be dismissed. *Id.* Defendants further argue that the Court should not credit Plaintiff's allegation that he was deterred from filing grievances, arguing that his volume of grievances submitted shows that the grievance process remained available to him. *Id.*

With their Motion, Defendants provide declarations and records regarding Plaintiff's exhaustion efforts. *See* Docs. 67-1 through 67-5. In sworn declarations, Assistant Warden at Columbia Correctional Institution, Krissy Stanford, and Operations Analyst for the FDOC Bureau of Policy Management and Inmate Appeals, Lawanda Sanders-Williams, state that they have provided true and accurate records of the informal grievances, formal grievances, and appeals submitted by Plaintiff from December 26, 2019 through November 5, 2023 (the date of Plaintiff's initial complaint). Docs. 67-3 at 1; 67-4 at 1. Those records show that Plaintiff filed 59 informal grievances, 58 formal grievances, and 55 appeals in that period. Docs. 67-3 at 3–10; 67-4 at 3–8. Defendants further submitted a sworn statement from Jacqueline

Spanios, FDOC's Grievance Coordinator at Suwannee Correctional institution, who states the grievance procedure at Suwannee was designed "in such a manner that there is no hinderance or impediment to any inmate's utilization of the grievance procedure at any level." Doc. 67-5 at 1. As support, Spanios outlines the procedure for submission of grievances. *Id.* at 1–2. Spanios states that every day a classification staff member walks around to collect the grievances with a locked box, which has a slot only big enough to slip the grievances inside, and that if an inmate has a grievance the inmate will hold it up to the flap or window then either place it into the box or have the classification staff member place it in the box while in the inmate's view. *Id.* Spanios explains the classification staff member will continue through the wing, before continuing to the next wing or to return the box to the grievance coordinator or other staff member assigned by the Warden, who are the only persons in possession of a key to unlock the grievance box. *Id.* at 2. For inmates not in confinement, there are locked grievance boxes that an inmate may simply walk to and place his or her grievance in through the slot only big enough to fit the grievance. *Id.* Every morning, a classification officer retrieves the grievances, places them in a separate box, and gives that box to the grievance coordinator. *Id.* The grievance coordinator then unlocks the box, logs the grievances, and distributes them to the appropriate respondents. *Id.* at 2–3.

19

In response, Plaintiff first argues that exhaustion is an affirmative defense and cannot be addressed at the motion to dismiss stage. Doc. 77 at 9–10. Second, he states that his February 2020 grievance, in which he stated that Defendants admitted their actions were based on his prior grievances, was sufficient to exhaust his retaliation claims. *Id.* at 10. As to the April 2020 incident, Plaintiff maintains he cannot be faulted for failing to file a grievance regarding that incident where the Defendants' prior actions of reprisal deterred him from doing so. *Id.* at 11–12. As to Defendants' argument that he was clearly not deterred because he filed many other grievances following the incidents in question, Plaintiff suggests he only grieved issues that were "not sufficient motivation for reprisal" and he was specifically "deterred from filing grievances regarding excessive force." *Id.*

The Court rejects Plaintiff's assertion that Defendants may not raise the issue of exhaustion in a motion to dismiss. *See Bryant*, 530 F.3d at 1375–76 (stating "exhaustion should be decided on a Rule 12(b) motion to dismiss"). Accordingly, the Court addresses the merits of the argument below.

### 3. *Turner* Step One

Under the first step of the *Turner* analysis, the Court must review the allegations in Defendants' Motion and Plaintiff's response and accept as true Plaintiff's allegations. *See Whatley*, 802 F.3d at 1209. If Plaintiff's allegations show a failure to exhaust, then dismissal would be appropriate. *See id.*

Accepting Plaintiff's allegations that he exhausted these claims through grievances and that the grievance process was later rendered unavailable to him through intimidation, the Court finds dismissal of any claim for lack of exhaustion is not warranted at the first step of *Turner*. Thus, the Court proceeds to the second step of the two-part process, considers the Defendants' arguments about exhaustion, and makes findings of fact.

### 4. *Turner* Step Two

As dismissal would not be appropriate based on the allegations in the Defendants' motion and Plaintiff's response, the Court turns to the second prong of the *Turner* analysis. The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quotations and citation omitted) (alterations in original). However, to properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules," *Jones*, 549 U.S. at 218 (quotation marks omitted). Moreover, prisoners must "properly take each step within the administrative process." *Bryant*, 530 F.3d at 1378. The FDOC's rules require that informal and formal grievances be legible, include accurately stated facts, and address only one issue or complaint; however, they do not include any requirements regarding the level of detail required for grievances.

21

Fla. Admin. Code. R. 33-103.005(2)(b)2; 33-103.006(2)(d)-(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).

The Court first will address Plaintiff's exhaustion efforts as to the December 2019 incident. Initially, while Plaintiff asserts he filed a grievance regarding the December 2019 incident on December 27, 2019, *see* Doc. 13 at 10, the records provided by Defendants show that no informal or formal grievance was received from Plaintiff at that time. *See* Docs. 67-3 at 3, 7.[8] On February 25, 2020, Plaintiff submitted Appeal 20-6-08512, stating:

> This is an appeal of the formal grievance filed on 12.27.2019 in regards to the physical abuse against me on Dec. 26, [20]19 at around 9:30 pm by Sgt. Rathel & Duckwiler who punched and kicked me in the back, face, Torso area and chest severely for nearly 15 minutes, for no violation of my own, in the nurse station in F dorm after forcing me out on a medical/psych call-out.
>
> This abuse took place in the presence of Lt. J.C.Walker, nurse Morgan and Officer Sosa who all failed to intervene to stop this senseless abuse or to come to my aid in any verbal way or otherwise.

---

[8] The records demonstrate FDOC received one Informal Grievance submitted by Plaintiff on December 26, 2019, but that the grievance involved unrelated "canteen issues." Doc. 67-3 at 7.

> I am appealing without an attached copy of the response to the formal grievance at the level of the institution because I did not receive a copy of that response. And the delay in this appeal was because I was waiting and hoping to get that response in the mail, even after delay.
>
> This incident wasn't a mere use of force, but aggravated battery from which I am still suffering from injuries in the affected areas as well as back & chest pain.
>
> It all happened while I was cuffed behind my back & in shackles (leg irons), with repugnant sadism, cowardice, and deliberate indifference to my safety, and the law, by all officers present and the nurse (who also refused to document it).

Doc. 67-4 at 10. The FDOC official responded to Plaintiff's appeal as stated:

> Your appeal has been reviewed and evaluated. The issue of your complaint has been referred to the Office of the Inspector General for appropriate action. Upon completion of the necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you.
>
> As action has been initiated, you may consider your appeal approved from that standpoint. This does not constitute substantiation of your allegations.

*Id.* at 9.

The Court finds this grievance sufficient to grieve Plaintiff's excessive use of force and failure to intervene claims based on the December 26, 2019 incident. *Stoddard v. Heilig*, No. 3:23-CV-371-MMH-LLL, 2024 WL 1765199,

at *4 (M.D. Fla. Apr. 24, 2024) (noting officer's approval of informal grievance was enough to exhaust excessive force claim); *Luckey v. May*, No. 5:14-CV-315-MW-GRJ, 2016 WL 1128426, at *10 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted sub nom. Luckey v. Officer May*, No. 5:14CV315-MW/GRJ, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) (complaint referred to the Office of the Inspector General and response to grievance appeal stating "[a]s action has been initiated, you may consider your appeal approved from that standpoint," was sufficient to exhaust alleged assault*); Espinal v. Young*, No. 4:13cv116-RH/CAS, 2015 WL 5353005, at *2–5 (N.D. Fla. Aug. 19, 2015) (same). The Court rejects Defendants' argument that the December 2019 claims should be dismissed as to the Defendants who were not mentioned in this Appeal. *See Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."); *see also Jones*,  549 U.S. at 219 (holding that § 1983 claims are not automatically rendered noncompliant with the exhaustion requirement by the fact that not all defendants named in the complaints were named in the grievances). Thus, the excessive use of force and failure to intervene claims related to the December 2019 incident will proceed.

The Court does not, however, find Appeal 20-6-08512 sufficient to exhaust any retaliation claim related to the incident. Contrary to Plaintiff's

assertions, he does not specify in his February 2020 grievance that Defendants admitted to retaliating against him. Indeed, Plaintiff's grievance includes no facts which would alert the prison to the problem (that officials were engaging in this behavior in retaliation for his filing of grievances), and thus, fails to exhaust his retaliation claim. *See Martinez v. Minnis*, 257 F. App'x 261, 265 n.5 (11th Cir. 2007) (finding that plaintiff failed to exhaust retaliation claim because his grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the [prison] with notice of allegedly retaliatory action or the opportunity to correct it"). While Plaintiff mentions a formal grievance preceding this Appeal, the records demonstrate no such grievance was received by the FDOC. The Spanios declaration demonstrates that the administrative grievance procedure was available to Plaintiff, *see* Doc. 67-5, and Plaintiff's appeal shows that it was indeed available to him to grieve the issue. Plaintiff does not address the absence of this alleged grievance, nor does he provide a copy of it. Thus, Plaintiff's conclusory allegation of a December 27, 2019 grievance fails to overcome Defendants' evidence that there was an available administrative process and Plaintiff failed to use that process to exhaust his retaliation claim. *See Lawson v. Crutchfield*, No. 5:15-CV-150-MP-GRJ, 2016 WL 5219466, at *6 (N.D. Fla. July 5, 2016), *report and recommendation adopted*, No. 5:15-CV-00150-MP-GRJ, 2016 WL 5219626 (N.D. Fla. Sept. 21, 2016) (finding the

plaintiff failed to exhaust his claim despite his conclusory allegation that prison officials threw out his grievances where he provided insufficient evidence and failed to rebut the defendant's evidence of an available grievance procedure and nonuse by the plaintiff).

As to the claims stemming from the April 2020 incident, the Court finds Defendants have not met their burden to show Plaintiff failed to exhaust all administrative remedies. On April 28, 2020, Plaintiff filed a grievance regarding Defendant Pope-Jones denying him a meal. *See* Doc. 67-3 at 15, 16. The Court agrees this grievance does not discuss any facts related to an alleged excessive use of force, failure to intervene, or retaliation claim, and thus cannot exhaust the claims raised in Plaintiff's Amended Complaint regarding this incident. Most of Plaintiff's other relevant grievances and appeals are seeking to overturn his disciplinary report regarding an April 2020 incident. *See* Docs. 67-3 at 12 ("This is an appeal of DR 230-200532 . . . . Wherefore, this DR must be expunged from my record."), 14 ("This is an appeal of DR 230-200531."); 67-4 at 12 ("This is an appeal of Grievance  2005-230-035, appealing DR # 230-200531. . . . This DR is not harmless. It will extend my CM review period for 6 months unless it is expunged."), 16 ("This is a 2nd appeal of DR # 230-200532 because the first appeal's response failed to address the grounds adequately. . . . This DR is not harmless even if no DC time was applied because it would contribute to an extension of my review period on CMI for 6 more months."),

26

20 ("This is an appeal of the amended response to grievance 2005-230-034 denying my request to overturn DR  230-200532 . . . It must be expunged here."). While these grievances may to some degree discuss the April 2020 incident, they are insufficient to exhaust the claims contained in his Amended Complaint where Plaintiff's clear intention was to overturn his disciplinary report, not grieve any of the claims. *See Hamze v. Warner*, No. 3:21-CV-565-MMH-JBT, 2024 WL 111923, at *8 (M.D. Fla. Jan. 10, 2024) (finding plaintiff's grievances that challenged a disciplinary report arising from corrections officers' use of force did not properly exhaust his Eighth Amendment excessive force claims); *Berry v. Keith*, No. 3:20-CV-261-MMH-JBT, 2021 WL 1561493, at *6 (M.D. Fla. Apr. 21, 2021) (same); *Lawson*, 2016 WL 5219466, at *7 (same).

Plaintiff also submitted Appeal 20-6-31518 on August 27, 2020, and Appeal 20-6-33569 on September 23, 2020. Defendants do not address these Appeals in their Motion. *See* Doc. 67 at 12. Inmates may file direct grievances to the Office of the Secretary based on reprisal or an emergency. *See* Fla. Admin. Code 33-100.007(3). The Florida Administrative Code defines a "Grievance of Reprisal" as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code. R. § 33-103.002(9). Plaintiff clearly identifies each of these grievances as grievances of reprisals, stating he fears for his life, and that

certain "malfeasance is coming from the level of the administration," and that certain actions were because he had filed grievances. Accordingly, while FDOC officials returned both Appeals without action after rejecting them as either an emergency grievance or grievance of reprisal, *see* Doc. 67-4 at 27, 29, the Court declines to find he failed to properly take each step in the administrative process based on that response. *See Dimanche*, 783 F.3d at 1210–14 (finding the district court erred in dismissing claims for failure to exhaust where the FDOC improperly returned the plaintiff's grievance without action despite the plaintiff's grievance clearly stating it was a grievance of reprisal and explaining why he bypassed the institutional level).

Accordingly, the Court turns to the contents of those appeals. In Appeal 20-6-31518, Plaintiff makes no mention of the April 2020 incident and only claims reprisal actions from Officer Sosa based on three events occurring in May 2020, August 2020, and an unspecified time after the August incident. Doc. 67-4 at 28. That Appeal, accordingly, does not exhaust the claims. However, in Appeal 20-6-33569, while addressing the retaliation at Suwannee, Plaintiff writes: "On April 27, 2020, Officer Pope-Jones . . . denied me lunch by giving me (through the inmate worker) an empty tray. The next day, April 28, 20[20], he had me gassed and placed on property restriction, along with Lt. Walker and Sgt. Stokes. They attempted to force me to go to medical & undergo a cell-search just because I grieved the denial of the meal the previous day,

28

April 27, 20[20], which is flagrantly outrageous." Doc. 27-4 at 31. The Court finds this grievance was adequate to alert the prison to the excessive force incident in April 2020, as well as a claim of retaliation.

Because the Court finds Defendants have failed to meet their burden to show that Plaintiff failed to exhaust his administrative remedies as to the claims relating to the April 2020 incident, the Court need not address Plaintiff's contention that the grievance process was rendered unavailable to him regarding the April 2020 based on officer intimidation. In conclusion, Defendants' motion to dismiss, insofar as it is based on Plaintiff's failure to exhaust, is granted only to the extent that he failed to exhaust his available administrative remedies as to the retaliation claims in reference to the December 2019 incident.

### D. Pre-Suit Notice for State Law Claims

In his Amended Complaint, Plaintiff requests "declaratory judgment that the defendants are guilty of assaulting and battering the Plaintiff in violation of state and federal law." Doc. 13 at 8. Defendants argue that to the extent Plaintiff seeks to raise state-law claims of assault and battery, he failed to provide notice as required pursuant to section 768.28, Florida Statutes. Doc. 67 at 13–14. In his response, Plaintiff states he is not pursuing any state law claim, but instead "sues Defendants under federal law," and thus was not required to fulfill the notice requirements of section 768.28. Doc. 77 at 8–9.

29

Because Plaintiff affirmatively states he is suing the Defendants under federal law, not state law, this argument is moot.

### E. Punitive Damages

Defendants further argue that Plaintiff's request for punitive damages must be dismissed because it is statutorily barred. Motion at 14–22. According to Defendants, 18 U.S.C. § 3626(a)(1)(A) precludes punitive damages in all civil rights cases because such damages are "prospective relief." *Id.* at 14–15. In support of their contention, Defendants assert that punitive damages "are never necessary to correct a violation of a Federal right." *Id.* at 15. They also contend that even if an award of punitive damages is necessary to correct such a legal violation, that award could not satisfy the PLRA's "stringent limitations" as the relief is neither "narrowly drawn" nor "the least intrusive means necessary to correct the violation of the Federal right." *Id.* at 16–17.

Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Defendants are correct that punitive damages are considered "prospective relief" under § 3626. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015)). But their argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is misguided, and they have offered no controlling precedent in support.

While the Court is unaware of an Eleventh Circuit case in which that court has addressed Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021).[9] And it has held "[p]unitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights.'" *Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017). Also, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an

---

[9] In *Hoever*, the Eleventh Circuit declined to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626. *Hoever*, 993 F.3d at 1364 n.5.

instruction on awarding punitive damages. *See* Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights – 42 U.S.C. § 1983 Claims – Damages § 5.13.

The Court also finds persuasive other district court decisions explicitly concluding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil rights cases. *See, e.g., Brown v. Semple*, No. 3:16cv376, 2018 WL 4308564, at *14 (D. Conn. Sept. 10, 2018) (collecting cases); *Douglas v. Byunghak Jin*, No. 11-0350, 2014 WL 1117934, at *4-5 (W.D. Penn. Mar. 20, 2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms"). Thus, the Court declines to hold that § 3626 precludes a request for punitive damages in this § 1983 action, and the Motion is denied on this issue.

Accordingly, it is

**ORDERED:**

1.     Defendants Walker, Hodgson, Sosa, Rathel, Duckwiler, Pope-Jones, and Stokes' Motion to Dismiss (Doc. 67) is **GRANTED in part** to the extent Plaintiff requests monetary damages from these Defendants in their official capacities and to the extent Plaintiff failed to exhaust any First Amendment retaliation claim relating to the December 2019 incident, and is **DENIED in part** in all other respects.

2.    Defendants Walker, Hodgson, Sosa, Rathel, Duckwiler, Pope-Jones, and Stokes shall file an answer to the Amended Complaint (Doc. 13) within **twenty days** of the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of July, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

JaxP-12
C:    Abdelaziz Hamze, L81379
      Counsel of Record

33